IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-120-D

| KIMBERLY ANN AUSTIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Kimberly Ann Austin ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #19] be denied, Defendant's Motion for Judgment on the Pleadings [DE #21] be granted, and the Commissioner's decision be upheld.

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff protectively applied for DIB on October 25, 2012, with an alleged onset date of August 9, 2008.[2] (R. 11, 52, 73.) These applications were denied initially and upon reconsideration, and a request for hearing was filed. (R. 94, 95, 99, 105.). A video hearing was held on September 4, 2014, before Administrative Law Judge ("ALJ") Edward T. Morriss, who issued an unfavorable ruling on December 15, 2014. (R. 8–29.) The Appeals Council denied Plaintiff's request for review on April 22, 2016. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

---

[2] Plaintiff subsequently amended the onset date to September 22, 2010. (R. 29, 33.)

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. (*Id.*)

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since September 22, 2010, the alleged onset date. (R. 13.) Next, the ALJ determined Plaintiff had the following severe impairments: "degenerative disc disease, depression, anxiety, and dizziness of unknown etiology." (*Id.*) Although Plaintiff's treating physician diagnosed her with post-traumatic stress disorder ("PTSD") (R. 270, 293, 298, 304, 311, 324), the ALJ found the PTSD to be neither severe nor non-severe (R. 17).[3]

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27.) The ALJ analyzed Listings 1.02, 1.04, 11.03, 12.04, and 12.06. (R. 14–15.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except no climbing ladders, ropes and scaffolds, and avoiding concentrated exposure to [environmental] hazards. The claimant has the ability to understand, remember, and carry out simple instructions.

---

[3] The ALJ does not discuss at length his reasons for dismissing the PTSD diagnosis. The record reveals, however, that Plaintiff's treating physician wrote a letter indicating Plaintiff's PTSD has an insignificant effect on her ability to work. (R. 332.) Plaintiff does not argue that the ALJ erred in dismissing the PTSD diagnosis and the undersigned, therefore, declines further review of the issue.

4

(R. 15.) At step four, the ALJ concluded Plaintiff was not able to perform her past relevant work as a technician.[4] (R. 23.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) The ALJ consulted the Medical-Vocational Guidelines ("The Grids")—taking into account Plaintiff's postural limitations, environmental limitations, and mental capacity—and found that Plaintiff's additional limitations had "little or no effect on the occupational base of unskilled medium work." (R. 23.) The ALJ did not consult a vocational expert ("VE") in making these determinations.

## IV. Plaintiff's Argument

Plaintiff contends the ALJ erred at step five by failing to consult a VE when the record was "replete with non-exertional limitations from [her] impairments." (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #20] at 7.) Specifically, Plaintiff argues that the ALJ improperly overlooked a medical opinion that Plaintiff might have social limitations. (*Id.*) The undersigned finds no merit in Plaintiff's argument, and, therefore, recommends that the matter be upheld.

Plaintiff argues the ALJ erred in relying on The Grids and not consulting a VE to determine the vocational impact of Plaintiff's limitations when the bulk of those

---

[4] The ALJ classified Plaintiff's past relevant work as "a technician." (R. 23.) A VE was not retained to provide more detail for Plaintiff's past relevant work. However, the record does show that Plaintiff worked as an industrial line technician, packaging toothpaste for Proctor & Gamble. (*See* R. 35, 209.) Consulting the Dictionary of Occupational Titles, it appears that the title of "Machine Packager" would be applicable. http://www.occupationalinfo.org/92/920685078.html (last visited Aug. 4, 2017).

5

limitations were nonexertional. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 7.) Plaintiff correctly asserts that The Grids are not always dispositive and a VE is generally needed when both exertional and nonexertional limitations exist. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 7.) However, the Commissioner appropriately distinguishes that an ALJ need not always use a VE to assess the impact of nonexertional limitations. (Def.'s Mem. Supp. Mot. J. Pldgs. at 6.)

The Fourth Circuit has "recognize[d] that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on [T]he [G]rids." *Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir. 1989) (citing *Grant v. Schweiker,* 699 F.2d 189 (4th Cir. 1983)). In determining whether a nonexertional limitation rises to the level of an impairment, "[t]he proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id.*

The Commissioner cites *Guyton v. Colvin*, No. 7:15-CV-00059-FL, 2016 WL 716515, at *4 (E.D.N.C. Feb. 5, 2016), *memorandum and recommendation adopted by* 2016 WL 737904 (E.D.N.C. Feb. 23, 2016), to support her argument that exclusive reliance upon The Grids can be sufficient in certain cases. (Def.'s Mem. Supp. Mot. J. Pldgs. at 5.) In *Guyton*, the ALJ found that the claimant had nonexertional limitations—including depression—but also found that they "had little or no effect on the occupational base." *Id.* at *5. This court held, based on case law from sister districts within the Fourth Circuit, that it was not error for the ALJ to conclude that

the nonexertional limitations did not so erode the job base as to preclude reliance on The Grids. *Id.* at *6.

In the present case, the ALJ cited specific vocational evidence while using The Grids and found that Plaintiff's additional limitations had "little or no effect on the occupational base." (R. 23.) Plaintiff argues that the ALJ should have considered "that her dizziness puts her at considerable risk of injury at her *current* job." (Pl.'s Mem. Supp. Mot. J. Pldgs. at 7) (emphasis added). The ALJ directly addressed Plaintiff's limitation to work environments without heavy machinery and found it "would not significantly erode the medium occupational base." (R. 23 (citing SSR 85–15, 1985 WL 56857, at *8 (Jan. 1, 1985)).) The ALJ also explained that Plaintiff retained "the ability to understand, remember, and carry out simple tasks" despite her anxiety and depression, which meant she could perform unskilled work. (R. 23 (citing SSR 85–15, 1985 WL 56857, at *4).) Here, just as in *Guyton*, the ALJ discussed the medical evidence, found that Plaintiff's nonexertional limitations did not impair her, and pointed to agency rulings to show that these limitations did not so erode the job base as to preclude reliance on The Grids. Thus, the ALJ did not err at step five by relying exclusively on The Grids.

Although Plaintiff does not argue that the ALJ erred in failing to give more weight to one of the medical opinions in the record, the undersigned addresses this issue because (i) Plaintiff alludes to it (Pl.'s Mem. Supp. Mot. J. Pldgs. at 7) and (ii) it is relevant to the issue regarding Plaintiff's nonexertional limitations and The Grids. Plaintiff states "Henry Tonn, MS, found that [Plaintiff] may have trouble interacting

7

with peers and coworkers." (*Id.*) As the Commissioner points out, the ALJ referenced Mr. Tonn's opinion in the decision and explained that an opinion that Plaintiff *may* have limitations is not an opinion that Plaintiff *has* those limitations. (R. 21; Def.'s Mem. Supp. Mot. J. Pldgs. at 4 n.2.) To give more context to Mr. Tonn's opinion, he wrote that

> [Plaintiff] is able to perform simple routine and repetitive tasks and maintain concentration and persistence at a task. She *might* have *some* trouble interacting with peers and coworkers, however, since it is felt she *probably* has difficulty going out in society. She can probably respond appropriately to supervision. . . . Whether or not she can work at all given her medical problems would have to be determined by the medical personnel.

(R. 348) (emphases added). Mr. Tonn's imprecise language suggests that Plaintiff's social limitations are minimal, if present at all; and his deference to medical personnel highlights the uncertainty of this opinion. The ALJ noted that Plaintiff admitted having no difficulty getting along with family, friends, neighbors, and others, as well as shopping in public. (R. 14, 21, 185, 347.) Lastly, Plaintiff does not cite any other evidence to corroborate Mr. Tonn's opinion regarding Plaintiff's possible social limitations. Thus, the undersigned determines that that the ALJ did not err in discrediting Mr. Tonn's opinion.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE #21] be GRANTED, and the Commissioner's decision be upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 21, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 5th day of August 2017.

_Kimberly A. Swank_
KIMBERLY A. SWANK
United States Magistrate Judge